UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRY EUGENE HARRIS,<br><br>Plaintiff,<br><br>v.<br><br>DR. JUAN CALZETTA, et al.,<br><br>Defendants. | CASE NO. 1: 13-cv-001088-MJS<br><br>**ORDER**<br><br>**1. DENYING PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>**2. GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(ECF NOS. 81, 83)**<br><br>**CLERK OF COURT TO CLOSE CASE** |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. The action proceeds on Plaintiff's first amended complaint's Eighth Amendment medical indifference claim against Defendant Dr. Juan Calzetta. This matter is before the undersigned for all purposes pursuant to the consent of the parties. (ECF Nos. 5, 39.)

Pending before the Court is Plaintiff's May 20, 2016, "Motion for Judgment as a Matter of Law" (ECF No. 81), which the Court construes as a motion for summary

judgment[1], and Defendant's May 31, 2016, motion for summary judgment (ECF No. 83). These motions are fully briefed and ready for disposition.

## I.     Plaintiff's Allegations

According to Plaintiff:

In June 2012, medical staff at Salinas Valley State Prison ("SVSP"), where Plaintiff was housed, informed Plaintiff that his kidneys were failing and that he would need to be put on dialysis.  Shortly thereafter, Plaintiff had a video call with Dr. Calzetta of Natividad Medical Center Training Facility ("Natividad").  Dr. Calzetta informed Plaintiff that he would need a fistula operation to implant a balloon in Plaintiff's upper left arm. Dr. Calzetta stated that Plaintiff's condition rendered the need for surgery immediate, but then added that as an inmate, Plaintiff was not a priority candidate, and so surgery would be scheduled as calendars permitted.  Plaintiff's condition began to worsen.  He complained to SVSP medical staff who stated they could do nothing until he had surgery.

On August 20, 2012, Plaintiff went to Natividad for surgery. Plaintiff told Dr. Calzetta that his condition had worsened and that he did not feel sufficiently healthy for surgery. Dr. Calzetta responded that "he did not care," and said that if he did not undergo surgery that day he might have to wait "awhile" for it to be rescheduled. Plaintiff went forward with surgery that day. Afterwards, he became very ill and experienced vomiting, dizziness, weakness, and an inability to think straight.  Dr. Calzetta did nothing to treat these symptoms, and Plaintiff was immediately transported back to SVSP.

Over the next two days, Plaintiff informed SVSP medical staff that his condition was worsening, he was experiencing tremors, and he was losing feeling in his arm and

---

[1] A motion for judgment as a matter of law is one brought pursuant to Federal Rule of Civil Procedure 50(a) any time after the opposing party has been fully heard but before the case is submitted to the jury. Under that Rule, a party may move for judgment as a matter of law on the ground that "a reasonable jury would not have legally sufficient evidentiary basis to find for" the opposing party on an issue. Since this case is not yet before a jury, the Court construes Plaintiff's motion as one for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

hand. Plaintiff was subsequently transferred to CSATF-Corcoran State Prison where he saw Dr. Nyenke.  Dr. Nyenke advised Plaintiff that something had gone wrong with his surgery.

In September 2012, Plaintiff was seen by Dr. Soto at Mercy Hospital.  Dr. Soto informed Plaintiff that the fistula was cut short and improperly installed during his first surgery.  Dr. Soto characterized the surgery as "[b]otched" and "incompetently" done. In October 2012, Dr. Soto performed a second surgery to correct Dr. Calzetta's mistake.

Plaintiff has since regained approximately twenty percent use of his hand and fifty percent decrease in his tremors, but he has been told he will experience pain, tremors, and the inability to fully use his hand for the rest of his life.

## II.     Legal Standards

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Wash. Mut. Inc. v. United States, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed R. Civ. P. 56(c)(1). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).

Plaintiff bears the burden of proof at trial, and to prevail on summary judgment, he must affirmatively demonstrate that no reasonable trier of fact could find other than for him. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). Defendants do not bear the burden of proof at trial and, in moving for summary judgment, they need

only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun, 509 F.3d at 984, and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 94 2 (9th Cir. 2011).

### III. Undisputed Facts

At all relevant times, Plaintiff was an inmate housed at SVSP, and Dr. Calzetta was a self-employed physician specializing in vascular surgery with privileges at Natividad. Calzetta Decl. ¶ 2.

Plaintiff suffers from a variety of ailments, including chronic kidney disease, Type II diabetes, and peripheral vascular disease. Raley Decl. Ex. B at 5270. In mid-July 2012, Plaintiff was diagnosed with chronic renal failure and deemed a candidate for dialysis; he was referred to a vascular surgeon for dialysis access. See id. at 3936-37, 4325, 5126, 5180-84.

#### A.   The August 7, 2012, Vascular Consultation

Dr. Calzetta's first encounter with Plaintiff was an August 7, 2012, evaluation for an AV fistula procedure on referral from Plaintiff's medical care provider at SVSP. Calzetta Decl. ¶ 6. Dr. Calzetta conducted this evaluation face-to-face; in the course of his entire medical career, Defendant has never participated in a telemedicine video conference with a prisoner. Id. ¶ 4.

Based upon the examination and Plaintiff's medical condition, Dr. Calzetta believed it to be medically appropriate to schedule the surgery for approximately two weeks from the date of the initial vascular consultation. Calzetta Decl. ¶¶ 7-8. Plaintiff was scheduled for a fistula operation August 20, 2012. Raley Decl. Ex. B at 5083. Dr.

Calzetta did not personally schedule Plaintiff for the operation. Calzetta Decl. ¶ 7. The scheduling was handled by clinical personnel at the hospital and prison officials. Id.

It is normal practice to perform an AV fistula procedure within a month of the initial vascular surgery consultation. Calzetta Decl. ¶ 8. The procedure is designed to supply one means of vascular access; it is considered an elective procedure and not an emergency. Id. ¶ 6.  Had Dr. Calzetta believed that Plaintiff needed surgery sooner than August 20, he would have performed it sooner. Id. ¶ 8.

### B.     The August 20, 2012, Fistula Operation

On August 20, 2012, the nursing staff at Natividad, the anesthesiologist, and Dr. Calzetta examined Plaintiff pre-surgery and concluded that Plaintiff was healthy, alert, and "calm." Calzetta Decl. ¶ 9; Raley Decl. Ex. C at 514, 523. Dr. Calzetta informed Plaintiff of the risks and side effects of the surgery. Raley Decl. Ex. B at 514. Dr. Calzetta was not aware of any symptoms or conditions that indicated Plaintiff should not undergo the procedure. Calzetta Decl. ¶ 10.

The AV fistula graft was performed on Plaintiff's left arm with no complications. Raley Decl. Ex. B at 5075-76, Ex. C at 539. Dr. Calzetta performed the surgery in the same manner and within the expected timeframe as he would have performed it for a non-incarcerated patient. Calzetta Decl. ¶ 11.

Natividad nurse's notes indicate that immediately following the procedure Plaintiff was awake and alert, denied pain, and displayed no redness or swelling at the surgical site. Raley Decl. Ex. C at 546. A nurse then monitored Plaintiff's condition 7 times between 12:45 p.m. and 1:45 p.m.; at no point during these visits were Plaintiff's complaints of pain any higher than a 2/10. See id. Plaintiff was discharged that same day with post-operative care instructions and a prescription for Norco for pain. Id. at 510-11. Dr. Calzetta never saw Plaintiff again after August 20, 2012.

Upon his return to SVSP, Plaintiff was examined for 15 minutes by a nurse.  He denied shortness of breath, diaphoresis or chest pain. Raley Decl. Ex. B at 3933. There

was no swelling, bleeding or discharge at the incision site. Id. Plaintiff's pain level was noted as 5/10, and he was directed to see a nurse in a day and follow-up with his primary care physician in three days. Id. No other follow-up was recommended, and he was cleared to return to housing that day. Id.

### C. Post-Operation

On August 28, 2012, Plaintiff was re-admitted to Natividad with complaints of nausea and vomiting, headache, and shortness of breath. Raley Decl. Ex. B at 4982-85. The notes also indicate that Plaintiff had left arm pain that worsened since the August 20, 2012, operation. See id. On August 29, 2012, Plaintiff was examined by Dr. Barbara Rever at Natividad, who noted that Plaintiff's left arm "has good functioning AV fistula; it is ready, maturing." Id. at 4983. Plaintiff was discharged on September 12, 2012.

On November 19, 2012, Plaintiff was admitted to Mercy Hospital where he was diagnosed with left arm steal syndrome. Raley Decl. Ex. D at 478. Steal syndrome is a clinical condition caused by arterial insufficiency distal to a hemodialysis AV fistula or a graft due to diversion of blood into the fistula or graft. Harris Decl. ¶ 23. It is characterized by hand pain, weakness, and diminished or altered sensation, among other things, and can progress to irreversible neuropathy, loss of function, gangrene, digit loss and limb loss. Id. Although rare, it is a known complication of an AV fistula and can occur in the absence of negligence. Id. Patients, like Plaintiff, with diabetes and peripheral vascular disease are at a higher risk for this condition. Id.

At Mercy Hospital, Plaintiff was evaluated by Dr. Soto and then underwent a drill procedure and placement of a 6 mm graft with drainage from the brachial artery to the distal brachial artery. Raley Decl. Ex. D at 530-31. Plaintiff was discharged on November 22, 2012. Id.

### IV. Discussion

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment. This is

true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976) (internal citations, punctuation and quotation marks omitted).

"Prison officials are deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay or intentionally interfere with medical treatment.'" Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) (quoting Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988)).

"In the Ninth Circuit, the test for deliberate indifference consists of two parts. First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong … is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations, punctuation and quotation marks omitted); accord, Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Lemire v. CDCR, 726 F.3d 1062, 1081 (9th Cir. 2013).

To state a claim for deliberate indifference to serious medical needs, a prisoner must allege that a prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

The undisputed facts in this case demonstrate that Defendant Dr. Calzetta's involvement in Plaintiff's medical care was limited to the following: He first saw Plaintiff on August 7, 2012, for a vascular surgery consultation. Dr. Calzetta agreed with the

determination that Plaintiff was eligible for surgery. Plaintiff was then scheduled by someone other than Dr. Calzetta for surgery August 20, 2012. On that date, Dr. Calzetta examined Plaintiff and determined that he was healthy and suitable for surgery; Dr. Calzetta performed the surgery as he would have for a non-incarcerated patient; and Dr. Calzetta discharged Plaintiff without distress or complications from the surgery.

Plaintiff's complaint is premised, first, on Dr. Calzetta's alleged delay in scheduling the fistula operation. Plaintiff contends that despite his chronic renal failure, surgery was delayed only because he was incarcerated. Plaintiff, however, presents no evidentiary support for this claim.

There is no evidence to refute Defendant's evidence that he never conducted a telemedicine appointment with Plaintiff and did not see Plaintiff in July 2012. There is no evidence to refute the evidence by Defendant that August 7, 2012, was the first contact between the two. There is no evidence to refute Dr. Calzetta's evidence that the August 20, 2012, surgery appointment was scheduled by someone other than Dr. Calzetta. Moreover, Defendant's medical expert, Dr. John Harris, opines in an unopposed declaration that this 2-week interval is an appropriately paced response to an end-stage renal disease diagnosis for a non-incarcerated patient. Harris Decl. ¶ 12. In the absence of a dispute as to these or any other facts material to this claim, this issue must be summarily adjudicated in favor of Defendant.

Plaintiff next asserts that Dr. Calzetta violated his constitutional rights when he performed the surgery despite Plaintiff's complaints of ill health. The record does not support this claim. Plaintiff was examined by Dr. Calzetta, an anesthesiologist, and nursing staff immediately before the procedure; in none of their records is there any suggestion that the surgery was contraindicated by Plaintiff's health. Instead, the records indicate Plaintiff was alert, calm, and healthy.

Lastly, Plaintiff contends that Dr. Calzetta "botched" the AV fistula operation permanently injuring Plaintiff's left arm. In response, Defendant's medical expert, Dr.

Harris, opines that Dr. Calzetta complied in all respects with the applicable standard of care for a vascular surgeon. Harris Decl. ¶ 8. Plaintiff' is not a trained medical professional capable of opining on the proper standard of care in these situations, and his dispute with Dr. Harris's opinions lacks competent support.

As noted supra, "[d]eliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." Id. "[E]ven gross negligence is insufficient to establish a constitutional violation." Id. (citing Wood, 900 F.2d at 1334. Here, even a favorable construction of the facts in Plaintiff's favor convinces the undersigned that there is nothing in the record to demonstrate that Dr. Calzetta's pre- or post-operation conduct rose to the level of a constitutional violation. As Plaintiff has not met the deliberate indifference standard and since the record demonstrates that Dr. Calzetta complied with the applicable standard of care for a vascular surgeon, the Court must enter summary judgment for Defendant. In light of this conclusion, the Court declines to reach Defendant's argument that he is entitled to qualified immunity.

**V.     Conclusion**

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiff's May 20, 2016, motion for judgment as a matter of law (ECF No. 81) is DENIED;
2. Defendant's May 31, 2016, motion for summary judgment (ECF No. 83) is GRANTED;
3. Judgment is entered for Defendant on Plaintiff's Eighth Amendment claim; and
4. The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

Dated:     September 16, 2016              /s/ *Michael J. Seng*
                                          UNITED STATES MAGISTRATE JUDGE

5.